**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN RENOUF, | ) | CASE NO. 5:22-cv-497 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| AEGIS RELOCATION COMPANY CORP., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Presently before the Court is the motion of plaintiff Brian Renouf ("plaintiff" or "Renouf") for default judgment pursuant to the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"), 49 U.S.C. § 14706 *et seq.*, and state law. (Doc. No. 15 (Motion); Doc. No. 16 (Memorandum in Support).) The motion is unopposed. For the reasons that follow, default judgment is granted as to plaintiff's Carmack Amendment claim, the state law claims are dismissed, and damages and fees are awarded as set forth below.

**I. BACKGROUND**

Defendant Aegis Relocation Company Corp. ("defendant" or "Aegis") is an active Florida-based corporation listed with the U.S. Department of Transportation. (Doc. No. 1 (Complaint) ¶¶ 4, 8.) In August 2021, Renouf hired Aegis to transport his family's household belongings from Oregon to Ohio. (*Id.* ¶ 5.) Upon arriving at Renouf's residence in Oregon on the date of the scheduled move, employees of Aegis informed Renouf that the company would not honor its original estimate and increased the rate it charged Renouf by 33%. (*Id.* ¶ 9.) Aegis also unilaterally changed the delivery date, causing Renouf to cut short a pre-planned family

vacation. (*Id*. ¶¶ 10–12.) During the interstate move, Aegis damaged a majority of the Renouf family's personal belongings. Renouf later learned that Aegis had also failed to properly pack the family's belongings as promised. (*Id*. ¶¶ 13–15.) Additionally, Aegis failed to unpack the goods as promised, instead "leaving them damaged in the boxes in which they were delivered." (*Id*. ¶ 16.) Renouf was required to hire a second moving company to unpack the goods at considerable additional cost. (*Id.*)

In the months that followed, Renouf, through his employer's legal department, provided Aegis with documentation and photographs of the damaged items. On November 11, 2021, Renouf submitted a claim for the replacement cost of the items damaged in the move, and Aegis confirmed receipt of Renouf's claim and evidence. (*Id*. ¶ 17.) On November 29, 2021, Renouf requested that Aegis provide a bill of lading, as one was not provided at the time of shipment. Aegis failed to provide the requested documentation. (*Id*. ¶ 18.) Follow-up requests for a bill of lading were also denied, and Aegis ultimately "wholly failed to respond to the claim." (*See id*. ¶¶ 19–20.)

On March 29, 2022, Renouf filed the present action in federal court, seeking damages under the Carmack Amendment. Renouf also asserted claims under state common law for breach of contract, negligence, gross negligence, and fraud in the inducement. (*Id*. ¶¶ 29–46.) In his prayer for relief, Renouf requested "actual damages, exemplary damages, costs and attorneys' fees, and prejudgment and post-judgment interest[.]" (*Id*. at 7.[1])

On April 1, 2022, a process server unsuccessfully attempted to serve a copy of the

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

complaint and summons upon Aegis. (Doc. No. 7 (Memorandum in Support of Motion for Expedited Substituted Service) ¶ 3.) On April 8, 2022, a process server unsuccessfully attempted to serve a copy of the complaint and summons upon Aegis's listed statutory agent. (*Id*. ¶ 4.) On May 25, 2022, the Court granted Renouf's motion for substituted service. (Doc. No. 8 (Order); *see* Doc. No. 6 (Motion for Substituted Service).) Thereafter, Renouf's counsel submitted a declaration attesting to the perfection of substituted service of Aegis on May 25, 2022. (Doc. No. 9 (Declaration of Service of Mike Seely).) Renouf applied to the Clerk for entry of default against Aegis (Doc. No. 10 (Application); Doc. No. 12 (Amended Application), and the Clerk entered default on June 29, 2022. (Doc. No. 14.)

Renouf's motion for default judgment is supported by his declaration. (Doc. No. 16-1 (Declaration of Brian Renouf).) Appended to Renouf's declaration is a spreadsheet cataloguing the items damaged in the move and their respective values (Exhibit 1-A), and Aegis's Interstate Revised Written Estimate. (Exhibit 1-B.) In support of his request for attorneys' fees, Renouf offers the declaration of his attorney. (Doc. No. 16-2 (Declaration of Mike Seely in Support of Attorneys' Fees).) In all, Renouf seeks damages in the amount of $133,533.00, attorneys' fees in the amount of $28,027.71, pre-judgment interest, and post-judgment interest. (Doc. No. 16 at 5.) Renouf also seeks an award of exemplary damages in an amount to be determined by the Court. (*Id*.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs default and default judgment. Default has been entered by the Clerk against defendant pursuant to Rule 55(a). (*See* Doc. Nos. 10, 12, 14.) Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded

factual allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citation omitted).

Under Rule 55(b)(2), the Court may enter default judgment without a hearing, but may conduct a hearing if the Court needs to: (1) conduct an accounting; (2) determine the amount of damages; (3) establish the truth of any allegations by evidence; or (4) investigate any other matter. In this case, the Court has examined the record before it and Renouf's submissions in support of its motion for default judgment and concludes that a hearing is not necessary to rule upon the motion.

The decision to grant default judgment is within the Court's discretion. *See AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing, among authority, 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2685 (3d ed. 1998) ("This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a).")). Thus, Aegis's default does not automatically entitle Renouf to relief.

In order to rule upon Renouf's motion, the Court must determine whether the factual allegations in the complaint deemed admitted by Aegis's default, and reasonable inferences derived therefrom, are sufficient to satisfy the elements of Renouf's legal claims for which he seeks default judgment. *See Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016) (finding even though defendant has defaulted, the court must determine whether factual allegations accepted as true state a claim for relief with respect to the claims for which plaintiffs seek default (citation omitted)); *see also Kwik–Sew Pattern Co. v. Gendron*, No. 1:08-cv-309, 2008 WL 4960159, at *1 (W.D. Mich. Nov. 19, 2008) ("[A] court may not enter default

4

judgment upon a legally insufficient claim." (citations omitted)). Legal conclusions in the complaint are not deemed admitted by a defendant's default.

In addition, "[a]n entry of default judgment requires some affirmation that the person against whom the default judgment is obtained is not (1) 'an infant or incompetent person' who is unrepresented; (2) a member of the armed services who is entitled to protection against default pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix § 401 *et seq.*; or (3) an officer or agency of the United States." *Leach v. Lifeway for Youth, Inc.*, No. 1:07-cv-200, 2008 WL 1990390, at *1 (S.D. Ohio May 1, 2008) (citing Fed. R. Civ. P. 55(b), (c), (e); Advisory Committee Notes to Fed. R. Civ. P. 55, Supplementary Note.). As a business entity, Aegis is not a minor, incompetent person, or subject to the Soldiers and Sailors Relief Act of 1940. *See Zinganything, LLC,* 2016 WL 362359, at *2 (citing *Hitachi Med. Sys. Am., Inc. v. Lubbock Open MRI, Inc.*, No. 5:09-cv-847, 2010 WL 4638057, at *1 (N.D. Ohio Nov. 5, 2010) ("As corporations, the Defaulting Defendants are clearly not infants or incompetent persons.")).

### III. DISCUSSION

#### A. Liability on Plaintiff's Claims

##### 1. Carmack Amendment Claim

Count One of the complaint alleges a claim under the Carmack Amendment. To set forth a *prima facie* case under the Carmack Amendment, a shipper must establish the following: (1) the delivery of goods to the carrier in good condition, (2) the arrival of goods in damaged condition, and (3) the amount of damages measured by actual loss. *Great W. Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 966 (S.D. Ohio 2009) (citing *Mo. Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134, 138, 84 S. Ct. 1142, 12 L. Ed. 2d 194 (1964)). The Carmack Amendment also has

a jurisdictional threshold of $10,000 that must be satisfied. *See* 28 U.S.C. § 1337(a) ("The district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of Title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs."). If the shipper establishes a *prima facie* case, and exceeds the threshold floor, the burden of proof shifts to the carrier "to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Missouri Pac. R.R.*, 377 U.S. at 138 (citations omitted).

Here, Renouf sufficiently alleges that the goods in question were received by Aegis in good condition, that the goods arrived at their final destination in damaged condition, and that the amount of actual damages was in excess of $75,000.00. (Doc. No. 1 ¶¶ 1, 9–15, 29–31.) As to evidentiary proof of damages, Renouf has appended to his motion the aforementioned declaration, spread sheet, and estimate from Aegis.

Accepting Renouf's allegations of liability as true, Renouf has established a *prima facie* case under the Carmack Amendment, and he has offered sufficient evidentiary proof that his actual damages exceed the threshold amount of $10,000.00. Further, Aegis has failed to satisfy Renouf's losses (Doc. No. 1 ¶ 20), and has otherwise failed to offer any evidence in support of its burden to show that it was free of negligence and/or that the damage to the cargo in question was one of the excepted causes recognized under the Carmack Amendment. Renouf is entitled to judgment as to liability on his Carmack Amendment claim.

    2.    *State Law Claims*

It appears that Renouf has pleaded his state law claims in the alternative, raising them solely in the event that the Court did not find that the facts set forth a claim under the Carmack

Amendment. (*See, e.g.,* Doc. No. 1 ¶¶ 33, 37, 40, 44.) Nevertheless, because Renouf has requested certain damages that are not available under the Carmack Amendment but are otherwise available under Ohio common law, the Court will briefly address the preclusive effect of the Carmack Amendment.

It is well settled that the Carmack Amendment completely preempts a shipper's state common law and statutory causes of action. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06, 33 S. Ct. 148, 57 L. Ed. 314 (1913); *see also Automated Window Mach., Inc. v. McKay Ins. Agency, Inc.*, 320 F. Supp. 2d 619, 620 (N.D. Ohio 2004). Indeed, in *Adams Express*, the Supreme Court stated that, "[a]lmost every detail of the [shipper-interstate carrier relationship] is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and superseded all state regulation with reference to it." *Adams Express*, 226 U.S. at 505–06.

The Court in *Adams Express* thus held that claims arising out of loss or damage to property transported in interstate commerce are governed by the Carmack Amendment and that all state law claims are preempted. *See id.* Courts, like the Sixth Circuit, have uniformly recognized that the Carmack Amendment's broad preemptive effect extends to all state law claims arising from the transportation and delivery of goods, whether such claims contradict or supplement Carmack Amendment remedies. *See Am. Synthetic Rubber Corp. v. Louisville & N.R. Co.*, 422 F.2d 462, 465 (6th Cir. 1970) (The Carmack Amendment is "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." (quotation marks and citation omitted)); *see, e.g.*, *Moffit v. Betkins Van Lines Co.*, 6 F.3d 305, 306–07 (5th Cir. 1993)

7

(Carmack Amendment preempted state law claims for intentional and negligent infliction of emotional distress, breach of contract, misrepresentation, fraud, negligence, and gross negligence).

There is "an exception to Carmack preemption when 'claims [are] unrelated to the loss of, or damage to, goods in interstate commerce.'" *Next F/X, Inc. v. DHL Aviation Ams., Inc.*, 429 F. Supp. 3d 350, 361 (E.D. Ky. 2019) (quoting *Val's Auto Sales & Repair, LLC v. Garcia*, 367 F. Supp. 3d 613, 620 (E.D. Ky. 2019) (further citation omitted)). "The exception is quite narrow, however, as the preemption embraces all loses resulting from any failure to discharge a carrier's duty as to any party of the agreed transportation." *Id*. at 362 (quotation marks and citations omitted); *see also York v. Day Transfer Co.*, 525 F. Supp. 2d 289, 299 (D.R.I. 2007) ("Thus, to avoid [Carmack] preemption a party must allege conduct on the part of the carrier that is independent from the shipping and transportation [and delivery] of goods at issue, and even from the claims process that may follow—something akin to an allegation of assault and injury inflicted by the carrier upon the shipper." (citations omitted)).

The Court finds that all of Renouf's state law claims are preempted by the Carmack Amendment, as they all involve a "failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *N.Y., Phila. & Norfolk R.R. Co. v. Peninsula Produce Exch.*, 240 U.S. 34, 38, 36 S. Ct. 230, 60 L. Ed. 511 (1916). Each of Renouf's state law claims, whether based in contract or tort, seek damages flowing from the shipping agreement with Aegis.

Even Renouf's fraud in the inducement claim, which is limited to Aegis's alleged failure to honor its quote and previously agreed delivery date, falls within the wide net cast by Carmack

8

preemption. *See Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 689 (9th Cir. 2007) ("It applies equally to fraud and conversion claims arising from a carrier's misrepresentations as to the conditions of delivery or failure to carry out delivery."); *Smith v. United Parcel Serv.*, 296 F.3d 1244, 1247–48 (11th Cir. 2002) (Plaintiffs "base their fraud and negligence, wantonness, or willfulness claims on UPS's failure to provide them with particular transportation and delivery services. Therefore, the [plaintiff's] claims fall squarely within the preemption coverage of the Carmack Amendment.") (collecting examples); *see, e.g.*, *Moffit*, 6 F.3d at 306–07 (Carmack Amendment preempted claim for intentional infliction of emotional distress for failing to deliver a family's belongings in time for Christmas); *Duerrmeyer v. Alamo Moving & Storage One, Corp.*, 49 F. Supp. 2d 934, 936 (W.D. Tex. 1999) (Carmack Amendment completely preempts "state law claims seeking to recover damages for charging an improper rate for transporting the goods and the failure to fulfill duties closely related to the duty of delivery."); *Pietro Culotta Grapes Ltd. v. S. Pac. Transp. Co.*, 917 F. Supp. 713, 716 (E.D. Cal. 1996) (claims based on conduct prior to or after shipment are preempted by the Carmack Amendment) (collecting cases); *United Van Lines, Inc. v. Shooster*, 860 F. Supp. 826, 828–29 (S.D. Fla. 1992) (finding that the Carmack Amendment preempted a claim based on the alleged fraudulent estimate made to induce a contract).

Because all of Renouf's state law claims are preempted by the Carmack Amendment, they are dismissed.

**B.     Damages under the Carmack Amendment**

While a plaintiff's well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, the same is not true for damages. *Ford Motor Co.*, 441 F. Supp. 2d at 848 (citing *Thomson v. Wooster*, 114 U.S. 104, 5 S. Ct. 788, 29 L. Ed. 105 (1885)); *Nat'l Satellite Sports, Inc. v. Mosley Entm't, Inc.*, No. 01-cv-74510, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2022) (the allegations of the complaint regarding the amount of damages are not controlling) (citations omitted). "[T]he civil rules 'require that the party moving for a default judgment must present some evidence of its damages.'" *IBEW Local Union 82 v. Union Lighting Prot.*, No. 3:11-cv-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (quoting *Mill's Pride, L.P. v. W.D. Miller Enterpr.*, No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)). To fix Renouf's damages in this case, the Court must determine not only what damages are available under the Carmack Amendment, but also whether those damages have been sufficiently established.

   *1.     Actual Damages*

The Carmack Amendment, as codified at 49 U.S.C. § 14706, allows a shipper to recover damages from a carrier for actual loss or injury to the property resulting from the transportation of cargo in interstate commerce. 49 U.S.C. § 14706(a)(1). "Within the meaning of the Carmack Amendment, actual loss or injury to the property is ordinarily measured by the reduction in market value at destination or by replacement or repair costs occasioned by the harm." *Zurich N. Am. (Can.) v. Triple Crown Servs. Co.*, No. 07-13322, 2008 WL 4642864, at *5 (E.D. Mich. Oct. 20, 2008). In Renouf's declaration, he avers that the amount of damage to his family's personal belongings totaled $108,348.00. (Doc. No. 16-1 ¶ 3.) This amount is supported by the spread

sheet appended to the declaration that describes the damage to each item and its market value. (Doc. No. 16-1, Ex. 1-A, at 4–5.) The Court finds that this evidence sufficiently establishes the existence of actual damages in the amount of $108,348.00.

Renouf also seeks to recover the difference between Aegis's initial estimate and its revised estimate, as well as the amount he spent to have a second moving company unpack his belongings when Aegis failed to do so. "Recoverable [actual] damages [also] includes damages for delay, lost profits (unless they are speculative), and all reasonably foreseeable consequential damages." *Am. Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 931 (7th Cir. 2003) (internal quotation marks and citations omitted); *see Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc*., 414 F.3d 546, 549 (5th Cir. 2005) ("A carrier's liability under the Carmack Amendment includes all reasonably foreseeable damages resulting from the breach of its contract of carriage, including those resulting from nondelivery of shipped goods as provided by the bill of lading." (quotation marks and footnotes omitted)).

The Court finds that the costs associated with the change in the contract price and the expense incurred because of Aegis's failure to unpack Renouf's belongings were reasonably foreseeable consequential damages resulting from Aegis's failure to fully execute its duties under the parties' carrier agreement. Further, the Court finds that Renouf has effectively demonstrated actual loss amounts of $22,349.00 (representing the additional amount over and above defendant's original estimate), and $2,836.00 (representing the amount Renouf incurred because Aegis failed to unpack the goods as promised) for these items. (*See* Doc. No. 16-1 ¶¶ 2, 4.)

11

Adding these sums to the amount previously determined to represent the damage to Renouf's personal property, the Court finds that Renouf has established his right to actual damages in the amount of $133,533.00.

*2.  Punitive Damages*

Renouf also seeks an award of exemplar or punitive damages but fails to point to any authority holding that such damages are available under the Carmack Amendment. As previously noted, the language of the Carmack Amendment is limited to the recovery of "actual damages," and there is no provision in the statute for punitive damages. Further, "[t]he greater weight of recent authority supports the proposition that the Carmack Amendment precludes punitive damages." *The Ltd., Inc. v. PDQ Transit, Inc*., 160 F. Supp. 2d 842, 844 (S.D. Ohio 2001) (collecting cases); *see Post v. Atlas Van Lines, Inc*., No. 2:06-cv-854, 2007 WL 9734748, at *3 (S.D. Ohio Sept. 20, 2007) ("The consensus is that punitive damages for claims arising from 49 U.S.C. § 14706(a)(1) is not allowed.") "These decisions rest on the fact that punitive damages are inconsistent with the Carmack Amendment because their availability would create an uncertainty in liability that the Amendment was intended to eliminate." *The Ltd., Inc.,* 160 F. Supp. 2d at 844–45.

The Court agrees with the majority of courts that have concluded that punitive damages are not available under the Carmack Amendment because allowance of such damages would defeat the purpose of the statute, which was to create uniformity out of disparity. Accordingly, Renouf's request for punitive damages is denied.

*3.     Attorneys' Fees*

Additionally, Renouf seeks attorneys' fees in the amount of $28,027.71. (Doc. No. 16-2 ¶ 11.) "The Carmack Amendment does not contain a general attorneys' fee provision, *Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 876 (5th Cir. 1996), but it does authorize fee awards in limited circumstances to shippers of 'household goods.'" *Osman v. Int'l Freight Logistics, Ltd.*, 405 F. App'x 991, 993 (6th Cir. 2011) (quoting 49 U.S.C. § 14708(d)). The Court finds that the complaint and the spreadsheet listing the damaged items demonstrate that the goods shipped by defendant constituted "household goods" as that term is used in the Carmack Amendment. *See* 49 U.S.C. § 13102(10) ("household goods" are "personal effects and property used or to be used in a dwelling" and for which transportation is "arranged and paid for by the householder"). (*See* Doc. No. 1 ¶ 5, Doc. No. 16-1, Ex. 1-A.) Thus, the Court finds that plaintiff is entitled to an award of reasonable attorneys' fees.[2]

Consideration of Renouf's request for reasonable attorneys' fees is based on the "lodestar" approach. *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). The lodestar calculation starts with the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.[3] *Hensley v. Eckhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The party seeking fees bears the burden of establishing entitlement to the amount claimed for the work performed based

---

[2] Renouf also satisfied the other requirements of § 14708(d) in that he filed a claim with Aegis within 120 days, he prevailed on his Carmack Amendment claim, and there is nothing in the record to suggest that the parties' dispute was subject to arbitration. (*See* Doc. No. 1 ¶ 17.)

[3] The fee may then be adjusted by considering: (1) time and labor; (2) novelty and difficulty of the case; (3) skill necessary; (4) the extent the attorney is precluded from working on other matters; (5) the customary fee; (6) whether the fee is fixed or continent; (7) the time limitations; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation, and ability; (10) the undesirability of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430, n.3 (citation omitted).

on billing records and rates charged. *Gonter v. Hunt Valve Co., Inc*., 510 F.3d 610, 617 (6th Cir. 2007); *see Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.").

Along with his motion for default judgment, Renouf submitted the affidavit of lead counsel, Attorney Mike Seely. (Doc. No. 16-2.) The affidavit details Attorney Seely's educational experience, the licenses he holds, the nature of his practice, and the courts in which he has been admitted to practice. (*Id*. ¶¶ 3, 5.) The affidavit identifies all of the attorneys and law firm staff that participated in the litigation of this case, their years of experience, and their respective hourly rates. (*Id*. ¶ 9.) Additionally, Attorney Seely offers a summary of the legal services provided by himself and other members of his firm in this case. (*Id*. ¶ 6.) While the affidavit maintains that an exhibit containing the firm's redacted fee statements relative to this case is attached, no such exhibit was filed with the Court. (*See id*. ¶¶ 11–12, referencing Exhibit 2-A.) Attorney Seely also offers his own opinion that the fees charged by himself and his colleagues are reasonable for this type of litigation (*see id*. ¶ 9), but plaintiff fails to offer an affidavit from outside counsel attesting to this fact.

Reasonable attorneys' fees are to be calculated based on the prevailing rate in the relevant community. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). The prevailing market rate is the rate "which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record . . . ." *Id*. Plaintiff's counsel is from Texas. But Renouf has not argued that he was unable to locate competent local counsel to handle his case, nor has he argued that an exception to the community market rule is

14

appropriate.[4] As such, the Court will assess the reasonableness of the requested rates by looking to the prevailing market rates in the greater-Cleveland area.

The prevailing market rate can be demonstrated in a number of ways, including affidavit, fee award studies, citations to prior precedent regarding reasonable rate adjudications, and the Court's own experience in recognizing reasonable applicable prevailing rates. *See Disabled Patriots of Am. v. Genesis Dreamplex, LLC*, 3:05-cv-7153, 2006 WL 2404140, at *3 (N.D. Ohio 2006) (citation omitted). As previously observed, neither Renouf nor his counsel have provided any evidence on the prevailing market rate in the relevant area. Notwithstanding this omission, the Court finds that the Ohio State Bar Association's Report ("OSBA Report"), *The Economics of Law Practice in Ohio in 2019, A Desktop Reference*, to be a particularly useful resource. Attorney Seely identified four attorneys and a paralegal who worked on this case. (Doc. No. 16-2 ¶ 9.) Attorney Seely is a partner with fourteen years of experience. (*Id.* ¶¶ 3, 9.) According to the OSBA Report, the mean hourly rate for an attorney with eleven to fourteen years of experience is $273.00. OSBA Report at 44. Leah Imbrogno, a "senior counsel," has been practicing law for an undisclosed number of years. (Doc. No. 16-2 ¶ 9.) Assuming that she has roughly the same years of experience, the OSBA Report would also provide a mean hourly rate of $273.00. OSBA Report at 44. Attorney Beau Gould is a third-year associate and Attorney Emily Lang is a fourth-year associate. (Doc. No. 16-2 ¶ 9.) The mean hourly rate for attorneys with three to five years of experience is $210.00. OSB Report at 44.

---

[4] In his affidavit, Attorney Seely concedes that the issues raised in this case were "not novel," even though they did require an understanding of the interplay between federal and state law. (Doc. No. 16-2 ¶ 10.) The Court finds that Renouf could have found competent local counsel to handle this case.

Attorney Seely also identifies a paralegal, Maria Kasco, who performed unspecified services on the case. (Doc. No. 16-2 ¶ 9.) "Fees for paralegal services are recoverable, as the term 'attorneys' fees' embraces fees of paralegals as well as attorneys." *Howe v. City of Akron*, No. 5:06-cv-2779, 2016 WL 916701, at *15 (N.D. Ohio Mar. 10, 2016) (citing *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 580, 128 S. Ct. 2007, 170 L. Ed. 2d 960 (2008)). A court should distinguish between legal work and non-legal work performed by paralegals or other support staff. "[A]ctivities such as filing a complaint, filing service requests, and filing return-of-service forms are clerical tasks that may be considered sufficiently 'legal work' to permit compensation, although any compensation would be at a lesser rate." *Rodriguez v. Astrue*, No. 3:11-cv-398, 2012 WL 2905928, at *3 (N.D. Ohio July 16, 2012). By contrast, "[p]urely clerical or secretarial tasks, that is *non-legal* work, should not be billed—even at a paralegal rate—regardless of who performs the work." *Id.* (emphasis in original) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989)).

Again, Attorney Seely only provides a summary of the services rendered by employees of his firm, and this summary is not further separated by the attorney or staff member or who performed each service. (*See* Doc. No. 16-2 ¶ 6.) Nevertheless, the Court will presume that counsel only billed out Ms. Kasco's time for services that are properly considered "legal work." In the Court's experience, reasonable hourly rates for paralegals performing legal work in this district run typically between $100.00 and $130.00. *See, e.g., NOCO Co. v. Mac Calabur Invest., LLC*, No. 1:21-cv-2173, 2022 WL 2870900, at *2 (N.D. Ohio July 21, 2022) (approving hourly paralegal rates of $100.00 and $125.00).

16

The hourly rates charged by Renouf's Texas counsel and staff in this case are considerably higher than those of the prevailing market rate.[5] Accordingly, as will be discussed more thoroughly below, the Court will make a deduction in the fee award to reflect this disparity.

As for the number of hours expended in this litigation, plaintiff and his counsel failed to supply the Court with this information. Instead, the Court has been provided with a summary of legal services performed in this case. (Doc. No. 16-2 ¶ 6.) The Court finds that the services outlined in Attorney Seely's affidavit represent the kind of services that competent counsel would be expected to perform in litigating this type of action. Nevertheless, given that the Court does not know how much time was expended on each activity—or even how much time in total was spent on this litigation—the Court cannot arrive at a reasonable number of hours. Further, because Renouf has failed to demonstrate that it was necessary to hire out-of-town counsel at rates that far exceed the prevailing market rate for the greater-Cleveland area, the Court cannot perform the traditional lodestar calculation and arrive at a reasonable award of attorneys' fees.

Under the circumstances, the Court finds that the best approach is to simply take an across-the-board reduction of Renouf's attorneys' fees request. *See Hensley*, 461 U.S. at 436–37 (indicating that trial courts "may simply reduce the award" as an alternative to "attempt[ing] to identify specific hours that should be eliminated"); *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 603 (6th Cir. 2014) (noting that "Supreme Court and Sixth Circuit precedent clearly permit trial courts to reduce attorneys' fees awards '[w]here the

---

[5] Specifically, the affidavit provides that Attorney Seely, a partner in his law firm, bills his services at an hourly rate of $573.14. Leah Imbrogno, a "senior counsel," bills at an hourly rate of $525.00. Associate-Attorneys Beau Gould and Emily Lange bill at hourly rates of $415.63 and $411.25, respectively. Maria A. Kasco, a paralegal, bills her services at an hourly rate of $284.40. (Doc. No. 16-2 ¶ 9.) Indeed, the paralegal assigned to this case billed at a higher rate than the average for experienced partners in the greater-Cleveland area.

documentation of hours is inadequate'" (quoting *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (further quotation marks and citation omitted))); *The N.E. Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (recognizing that courts may "rely on estimates" for attorneys' fee awards based on its "overall sense of a suit" (quotation marks and citation omitted)); *see, e.g., Richard v. Caliber Home Loans, Inc.*, 832 F. App'x 940, 948 (6th Cir. 2020) (approving district court's overall reduction of the requested fee by more than 70 percent to reflect excessive hourly rates, serious billing deficiencies, and limited success); *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 764 (N.D. Ohio Mar. 31, 2010) (taking a 50% across-the-board reduction of the fee request where the fee-seeking party provided "vague and incomplete records").

Upon consideration of relevant caselaw, the OSBA Report, the over-market rates billed by out-of-town counsel, the inadequate documentation supplied by Renouf, and the Court's own knowledge and experience, the Court finds that a reduction of 35% of the entire fee award is warranted. Such an approach takes into account the fact that Renouf's counsel achieved an excellent result—even though counsel was required to expend only limited effort as Aegis defaulted in the action—but failed to fully justify the fee request. The Court, therefore, awards Renouf $18,218.01 in attorneys' fees.

    *4.      Pre-judgment Interest*

The Carmack Amendment does not explicitly provide for or prohibit the award of prejudgment interest, and any award of prejudgment interest is committed to a court's broad discretion. *See Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 981–82 (3d Cir. 1984). "Awards of prejudgment interest are governed by considerations of fairness and are

awarded when it is necessary to make the wronged party whole." *In re Acequia, Inc.*, 34 F.3d 800, 818 (9th Cir. 1994) (citations omitted). The purpose of the Carmack Amendment is to compensate shippers whose goods are damaged while in the possession of a carrier. As such, the "award of pre-judgment interest as part of the 'full actual loss' is proper under . . . the Carmack Amendment[.]" *Co-Operative Shippers, Inc. v. Atchison, Topeka and Santa Fe Ry. Co.*, 624 F. Supp. 797, 800 (N.D. Ill. 1985), *aff'd in part, rev. in part*, 840 F.2d 447 (1988).

Next, the Court must determine which rate to apply. Because it is the purpose of the Carmack Amendment "to achieve national uniformity in the liability assigned to carriers[,]" *Rini v. United Van Lines*, 104 F.3d 502, 504 (1st Cir. 1997), the Court finds that applying one federal, uniform rate best "serves Congressional intent in passing the Amendment." *Richwell Grp., Inc. v. Seneca Logistics Grp., LLC*, 433 F. Supp. 3d 58, 65 (D. Mass. 2019). Therefore, the Court will award pre-judgment interest—as dictated by 28 U.S.C. § 1961—from the filing of the case on March 29, 2022 through the entry of judgment.

   5.   *Post-judgment Interest*

Courts have also awarded post-judgment interest in Carmack Amendment Claims. *See, e.g., Rini v. United Van Lines, Inc.*, 903 F. Supp. 234, 239 (D. Mass. 1995); *Fine Foliage of Fla., Inc. v. Bowman Transp., Inc.*, 698 F. Supp. 1566, 1576 (M.D. Fla. 1988) (applying 28 U.S.C. § 1961 and reasoning that application of a uniform federal rate for post-judgment interest complies with the goal of the Carmack Amendment to establish consistent federal law in the commerce area). For many of the same reasons already noted, the Court finds that an award of post-judgment interest is also appropriate, and awards post-judgment interest at the statutory rate identified in 28 U.S.C. § 1961.

### IV. Conclusion

For the foregoing reasons, plaintiff's motion for default judgment is GRANTED on plaintiff's Carmack Amendment, and plaintiff's state law claims are DISMISSED. Plaintiff is AWARDED actual damages in the amount of $133,533.00, and attorneys' fees in the amount of $18,218.01. Defendant is further ORDERED to pay prejudgment interest from March 29, 2022 to the date of judgment and post-judgment interest from the date of this Order until the judgment is satisfied, both at the statutory rate identified in 28 U.S.C. § 1961. The Court will enter judgment in favor of plaintiff and against defendant accordingly. This case is closed.

**IT IS SO ORDERED**.

Dated: November 15, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**